UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JOE DELGADILLO,<br><br>    Plaintiff,<br><br>v.<br><br>FIESTA PALMS, LLC, a Nevada limited liability company, d/b/a PALMS CASINO RESORT,<br><br>    Defendant. | 2:09-cv-1772-LDG-GWF<br><br>**<u>ORDER</u>** |

    Plaintiff Joe Delgadillo brought this action against Palms Casino Resort seeking compensatory and punitive damages based on alleged workplace discrimination. Delgadillo seeks relief based on six causes of action: age discrimination, national origin discrimination, race discrimination, retaliation, unlawful termination, and intentional infliction of emotional distress. Defendant has filed a motion for summary judgment on all of Delgadillo's claims (ECF No. 16, opp'n ECF No.18, reply ECF No. 20). For the reasons stated herein, the court grants Defendant's Motion.

**I. Analysis**

    A grant of summary judgment is appropriate only where the moving party has demonstrated through "the pleadings, the discovery and disclosure materials on file, and any affidavits" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (a), (c); *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). All justifiable inferences must be viewed in the light most favorable to the

non-moving party. *Cnty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000). The burden then shifts to the non-moving party to go beyond the pleadings and set forth specific facts demonstrating there is a genuine issue for trial. *Id.* The party opposing summary judgment "must cite to the record in support of the allegations made in the pleadings to demonstrate that a genuine controversy requiring adjudication by a trier of fact exists." *Taybron v. City & Cnty. of San Francisco*, 341 F.3d 957, 960 (9th Cir. 2003). If the non-moving party meets its burden, summary judgment must be denied. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

**A. Age, National Origin, and Race Discrimination; Wrongful Termination**

Delgadillo claims that Defendant discriminated against him on the basis of age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623, *et seq.*, and on the basis of national origin and race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2(a). The ADEA makes it unlawful "to discharge any individual or otherwise discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). Title VII makes it unlawful for an employer to "discharge any individual, or otherwise discriminate against any individual . . . because of such individual's race . . . or national origin." 42 U.S.C. § 2000e-2(a).[1]

---

[1] Delgadillo also alleges wrongful termination under Nevada Revised Statutes § 613.330(1)(a). That section makes it unlawful for an employer to "discharge any person, or otherwise to discriminate against any person . . . because of his or her race, . . . age, . . . or national origin." Nev. Rev. Stat. § 613.330(1)(a). Because this provision is almost identical to Title VII, Nevada courts look to federal law for guidance in discrimination cases, *see Pope v. Motel 6*, 114 P.3d 277, 280 (Nev. 2005), and apply the *McDonnell Douglas* burden-shifting approach, *see Apeceche v. White Pine Cnty.*, 615 P.2d 975, 977 (Nev. 1980). Accordingly, because a discrimination claim under Nevada law is substantially similar to a Title VII claim, the court will discuss only Title VII and the AEDA. *See Arberry v. Tejas Undergound, LLC*, No. 2:08-cv-00168-GMN-PA, 2010 WL 5070777, at *4 n.2 (D. Nev. Dec. 6, 2010); *cf. Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996).

In the absence of direct evidence of discrimination, courts analyze ADEA and Title VII discrimination claims according to the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g.*, *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008); *Coghlan v. Am. Seafoods Co. LLC*, 413 F.3d 1090, 1093-94 (9th Cir. 2005); *Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 658-59 (9th Cir. 2003). Under the *McDonnell Douglas* framework, a plaintiff must first make out a prima facie case of discrimination. *See Coghlan*, 413 F.3d at 1093-94. To do this, "a plaintiff must offer proof: (1) that the plaintiff belongs to a class of [protected persons]; (2) that the plaintiff performed his or her job satisfactorily; (3) that the plaintiff suffered an adverse employment action; and (4) that the plaintiff's employer treated the plaintiff differently than a similarly situated employee who does not belong to the same protected class as the plaintiff." *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006) (citing *McDonnell Douglas*, 411 U.S. at 802). If a plaintiff makes out a prima facie case, "the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for its adverse employment action." *Diaz*, 521 F.3d at 1207. "If the employer satisfies its burden, the employee must then prove that the reason advanced by the employer constitutes mere pretext for unlawful discrimination." *Id.*

A plaintiff can prove pretext either "(1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1127 (9th Cir. 2000). However, a plaintiff's indirect evidence must be both specific and substantial to overcome the legitimate reasons put forth by an employer. *Aragon*, 292 F.3d at 659. Furthermore, "[w]hile the burden of production may shift, the 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Id.* (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

3

Delgadillo maintains that he has established prima facie cases of discrimination based on age, national origin, and race. *See* Pl.'s Opp'n 4-5, ECF No. 18. Neither party disputes that Delgadillo is a member of the relevant protected classes. Delgadillo is an Hispanic male who was sixty three years-old when he was terminated. Delgadillo also maintains that "his job performance has met his [former] employer's legitimate expectations," that he suffered "an adverse employment action" when Defendant terminated him, and that he was treated less favorably than an individual "who was outside all of the protected classes of Plaintiff . . . ." *Id.*

In support of his disparate treatment claims, Delgadillo claims that Defendant conducted an "under raking" investigation on four individuals: Elliot (62 year-old Hispanic); DeYoung (55 year-old Caucasian); Delgadillo (63 year-old Hispanic); and an unnamed, non-Hispanic individual younger than forty years-old. Defendant terminated Elliot and DeYoung soon after the under raking investigation. Delgadillo was terminated a few months after the investigation, and the fourth individual was allegedly never terminated. Based on these allegations, Delgadillo apparently alleges that he has stated prima facie cases of race and national origin discrimination because two of the three employees the Defendant eventually terminated were Hispanic. Delgadillo also maintains that he has stated a prima facie case of age discrimination because each of the three employees that Defendant eventually terminated was older than forty, whereas the younger fourth employee was allegedly not terminated.

Summary judgment is proper because Plaintiff has failed to demonstrate any genuine issue of material fact regarding his claims. The court is skeptical that Delgadillo has stated a prima facie case of age, national origin, or race discrimination. After conducting under raking investigations, Defendant terminated Elliot (19 violations) and DeYoung (17 violations), and gave Delgadillo a verbal coaching (2 violations) and terminated him a few months later. Delgadillo has failed to allege whether the unnamed fourth employee experienced any discipline as a result of the investigation or the extent of his under raking violations, if any. In fact, beyond what scarce

information Delgadillo includes within the text of his Opposition, Delgadillo has not directed the court to any evidence regarding this fourth individual. However, even assuming the truth of his unsupported representations, Delgadillo has failed to provide information sufficient to establish that he was treated less favorably than any "similarly situated" employee outside of Delgadillo's protected classes. *See Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006) ("In order to show that the 'employees' allegedly receiving more favorable treatment are similarly situated (the fourth element necessary to establish a prima facie case under Title VII), the individuals seeking relief must demonstrate, at the least, that they are similarly situated to those employees in all material respects.") (citations omitted); *Vasquez v. Cnty. of L.A.*, 349 F.3d 634, 641 (9th Cir. 2003) ("[I]ndividuals are similarly situated when they have similar jobs and display similar conduct.") (emphasis added); *see also Burks v. Wis. Dep'p of Transp.*, 464 F.3d 744, 751 (7th Cir. 2006) ("[I]n order to show that a coworker is similarly situated to a terminated employee, the employee must show that the other coworker had a comparable set of failings.") (internal quotation marks omitted); *Jones v. Union Pac. R.R. Co.*, 302 F.3d 735, 745 (7th Cir. 2002) (holding that an employee who claimed he was similarly situated to a coworker made an "unsuitable comparison" because he was not disciplined for the same reasons as the coworker). Accordingly, the court is skeptical that Delgadillo has stated a prima facie case of age, national origin, or race discrimination. However, even assuming Delgadillo has produced the minimal proof necessary to establish a prima facie case of discrimination, *see Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994), summary judgment is nevertheless proper because Delgadillo has failed to demonstrate a genuine issue of material fact that Defendant's proffered reasons for Delgadillo's termination are mere pretext for unlawful discrimination, *see, e.g.*, *Green v. Seattle Art Museum*, 321 Fed. App'x 587, 589 (9th Cir. 2003).

Defendant maintains that it terminated Delgadillo for job abandonment on January 17, 2008, after Delgadillo repeatedly failed to appear for work or call in. On January 5, 2010,

Delgadillo's supervisor sent Delgadillo home and told him to speak with the Assistant General Manager prior to returning to work. Delgadillo claims that "pretext can clearly be shown by Plaintiff's sworn testimony" because "Plaintiff testified that he attempted to contact [the Assistant General Manger] on at least a few occasions," and this testimony "directly contradicts the testimony of various employees of Defendant in that they allege that (a) Plaintiff did not attempt to contact Defendant after he was asked to go home and (b) Defendant's employee's [sic] actually tried to contact Plaintiff after he was sent home, but no actual contact was ever made." Pl.'s Opp'n 5. The court fails to see these alleged contradictions. Defendant's employees apparently testified that they were not aware that Delgadillo ever tried to contact them. Accepting Delgadillo's testimony as true for the purposes of summary judgment, Delgadillo made three attempts to contact Defendant's employees, but he never spoke with, or left messages for, either of the persons he allegedly attempted to contact. Furthermore, Delgadillo's testimony that "he attempted to contact [the Assistant General Manger] on at least a few occasions" is not inconsistent with "Defendant's [employees' testimony that they] actually tried to contact Plaintiff after he was sent home, but no actual contact was ever made." Therefore, Delgadillo has failed to demonstrate a triable issue, based on specific and substantial evidence, that Defendant's legitimate, non-discriminatory rationale is mere pretext for unlawful discrimination based on age, national origin, or race. *See Aragon*, 292 F.3d at 659 ("However, Aragon's evidence must be both specific and substantial to overcome the legitimate reasons put forth by Republic.") (emphasis in original); *see also Budnick v. Town of Carefree*, 518 F.3d 1109, 1114 (9th Cir. 2008) ("The plaintiff must then prove by a preponderance of the evidence that the defendant's asserted reason is a pretext for discrimination.").

Delgadillo claims that "[p]retext can also be shown in that Plaintiff was asked to perform job duties above and beyond his role as a poker room dealer, and these duties were primarily asked of Plaintiff when others were also available and also commenced or substantially started after the

6

1  'poker room investigation' involving the Plaintiff." Pl.'s Opp'n 5. Delgadillo apparently theorizes
2  that Defendant's rationale for his termination in January 2008 is pretextual because he was asked
3  to deposit cash boxes with greater frequency after the November 2007 under raking investigation.
4  Even viewing the evidence in the light most favorable to Delgadillo, this bare allegation fails to
5  constitute specific and substantial evidence that Defendant's "proffered explanation is 'unworthy
6  of credence' because it is [either] internally inconsistent or otherwise not believable." *Chuang*,
7  225 F.3d at1127. Furthermore, insofar as Delgadillo suggests that an increased frequency of cash
8  box deposits constituted an "adverse employment action," Delgadillo has failed to identify the
9  relevant characteristics of those whom Defendant treated more favorably, and his argument fails
10 for the same reasons elaborated above. Finally, Delgadillo's "statistical" evidence fails to
11 demonstrate "a stark pattern of discrimination unexplainable on grounds other than [age, national
12 origin, or race]." *Aragon*, 292 F.3d at 663; *id.* at 663-64 (rejecting pretext argument on summary
13 judgment based on the fact that three of four individuals laid off were Caucasian because such
14 small-scale "statistical evidence presents no stark pattern, nor does it account for possible
15 nondiscriminatory variables, such as job performance"). Therefore, even viewing the evidence in
16 the light most favorable to Delgadillo, he has failed to carry his burden and demonstrate a triable
17 issue of fact that Defendant's explanation is pretext for unlawful discrimination based on
18 Delgadillo's age, national origin, or race.

19 **B. Retaliation**

20  Delgadillo claims that Defendant unlawfully retaliated against him "because of his stated
21 objections and opposition to unlawful national origin discrimination, age discrimination, and race
22 discrimination." Compl. ¶ 70. Title VII makes it unlawful for "an employer to discriminate
23 against any of his employees . . . because he [the employee] has opposed any practice made an
24 unlawful employment practice by this subchapter." 42 U.S.C.A. § 2000e-3(a). The AEDA

7

1 similarly prohibits an employer from retaliating against an employee based on the employee's
2 opposition to the employer's unlawful age discrimination practices.  29 U.S.C. § 623(d).

3    "To make out a prima facie case of retaliation, an employee must show that (1) he engaged
4 in a protected activity; (2) his employer subjected him to an adverse employment action; and (3) a
5 causal link exists between the protected activity and the adverse action."  *Ray v. Henderson*, 217
6 F.3d 1234, 1240 (9th Cir. 2000) (citing *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1464
7 (9th Cir. 1994)).  If a plaintiff asserts a prima facie retaliation claim, the burden shifts to the
8 defendant to articulate a legitimate nondiscriminatory reason for its decision.  *Id.*  If the employer
9 meets its burden, the plaintiff bears the ultimate burden of demonstrating that the reason was
10 merely a pretext for a discriminatory motive.  *Id.*

11    Delgadillo cannot succeed on his retaliation claim.  "[A] plaintiff must exhaust [his]
12 administrative remedies by filing a timely charge with the EEOC, or the appropriate state agency,
13 thereby affording the agency an opportunity to investigate the charge."  *B.K.B. v. Maui Police*
14 *Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002) (citing 42 U.S.C. § 2000e-5(b)).  "Allegations of
15 discrimination not included in the plaintiff's administrative charge may not be considered by a
16 federal court unless the new claims are like or reasonably related to the allegations contained in the
17 EEOC charge."  *Id.* at 1100.  Delgadillo specifically checked boxes on his Charge alleging
18 discrimination based on age, national origin, and race, but he left the box for retaliation blank.
19 Delgadillo's factual statement does not mention retaliation or that he objected to any of
20 Defendant's actions on the basis of unlawful discrimination.  Thus, Deladillo has likely foregone
21 his retaliation claim.  However, even assuming that he has properly preserved his retaliation claim,
22 Delgadillo has failed to make out a prima facie case of unlawful retaliation.

23    Delgadillo fails to direct the court to any evidence or testimony that he objected to
24 Defendant's actions on the basis of age, national origin, or race.  *See Learned v. City of Bellevue*,
25 860 F.2d 928, 932 (9th Cir. 1988) (holding that plaintiff could not state a Title VII retaliation
26

1  claim because he "did not allege that he ever opposed any discrimination based upon race, color,
2  religion, sex, or national origin"); *id.* (citing *Silver v. KCA, Inc.*, 586 F.2d 138, 142 (9th Cir.
3  1978)) ("under the clear language of the 'opposition' clause of [section] 704(a), a case of
4  retaliation has not been made out unless the 'retaliation' relates to the employee's opposition to a
5  [section] 703 violation"). Furthermore, although Delgadillo did object to discipline resulting from
6  his under raking violations and to the frequency of his cash box deposits, he never mentioned age,
7  national origin, or race, and his own testimony belies that any pre-termination "opposition [was]
8  based on [his] 'reasonable belief' that the employer [had] engaged in an unlawful employment
9  practice" under either Title VII or the AEDA. *E.E.O.C. v. Crown Zellerbach Corp.*, 720 F.2d
10 1008, 1013 (9th Cir. 1983); *see* Delgadillo Depo. 49:12-51:7; *see also Barber v. CSX Distribution
11 Servs.*, 68 F.3d 694, 701-02 (3rd Cir. 1995) ("Barber's letter to Human Resources complains about
12 unfair treatment in general and expresses his dissatisfaction with the fact that someone else was
13 awarded the position, but it does not specifically complain about age discrimination. Accordingly,
14 the letter does not constitute the requisite 'protected conduct' for a prima facie case of
15 retaliation."); *Mayfield v. Sara Lee Corp.*, No. C 04-1588 CW, 2005 WL 88965, at *8 (N.D. Cal.
16 Jan. 17, 2005) ("Though Rideau need not have invoked 'magic words' in order for his complaints
17 to constitute protected activity, he must have alerted his employer to his belief that discrimination,
18 not merely unfair personnel treatment, had occurred.").[2]

---

[2] Several unreported cases also illustrate the factual insufficiency of Delgadillo's retaliation claim. *See, e.g.*, *Green v. N. Seattle Cmty. Coll.*, 237 Fed. App'x 186, 187 (9th Cir. 2007) ("The district court properly granted summary judgment on Green's claim of retaliation because Green did not offer any evidence that his informal complaint to the College alleged racial discrimination."); *Hartwig v. Del Norte Cnty.*, 229 Fed. App'x 573, 573 (9th Cir. 2007) ("The district court properly granted summary judgment because Hartwig raised no genuine issue of material fact on the question whether her detailed, informal complaint to the School District included allegations of sexual harassment by her supervisor, or any other conduct proscribed by Title VII. It did not. Thus, Hartwig was not engaged in Title VII protected activity when she submitted her informal complaint. Therefore, Hartwig's Title VII retaliation claim is not viable.") (internal citations omitted); *Fundukian v. United Blood Servs.*, 18 Fed. App'x 572, 576 (9th Cir. 2001) ("Although the affidavits in the record show informal complaints to her supervisor about general inadequacies in UBS's minority donor recruitment program, these complaints do not indicate racial discrimination. Generalized complaints about her job

1  Delgadillo has also failed to demonstrate a causal link between his alleged opposition and
2  any adverse employment action.  To establish a causal link, Delgadillo must prove that Defendant
3  was aware of his involvement in a protected activity.  *See Cohen v. Fred Meyer, Inc.*, 686 F.2d
4  793, 796 (9th Cir. 1982).  Delgadillo cannot logically demonstrate that Defendant was aware of his
5  involvement in a protected activity when he never actually engaged in a protected activity.[3]
6  However, even assuming that Delgadillo could state a prima facie claim, he has failed to raise a
7  triable issue that Defendant's reasons were pretext for unlawful retaliation.  Therefore, in any
8  event, summary judgment is proper.

**C. Intentional Infliction of Emotional Distress**

Summary judgment is appropriate as to Delgadillo's intentional infliction of emotional distress claim.  To succeed on a cause of action for intentional infliction of emotional distress under Nevada law, a plaintiff must prove "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation." *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1386 (Nev. 1998) (citing *Star v. Rabello*, 625 P.2d 90, 91-92 (Nev. 1981) (citations omitted)).

---

conditions and how these conditions were affecting her efficiency do not constitute protected opposition because they do not relate to conduct made unlawful by Title VII."); *cf. Pryor v. Heart N Soul Tax Servs. of Vallejo, Inc.*, No. 09-55730, 2010 WL 4324379, at *1 (9th Cir. 2010) ("The district court properly dismissed Pryor's retaliation claim because he did not sufficiently allege facts suggesting that he complained about conduct prohibited by Title VII before being terminated or otherwise subjected to an adverse action.").

[3] The following unreported case also illustrates this logical impossibility. *See Carrasco v. San Ramon Valley Unified School Dist.*, 258 Fed. App'x 114, 115-16 & n.1 (9th Cir. 2007) ("To establish a successful opposition claim under Title VII, Carrasco must have reasonably believed the District engaged in discriminatory practices and opposed the unlawful practice by specifically referring to the unlawful practice . . . Here, Carrasco's petition was vague and made no reference to discrimination by the District. Because of this lack of specificity, the District could not be aware that Carrasco had engaged in protected activity. Logically, without referring to discrimination by the District, the petition circulated by Carrasco cannot be opposed to unlawful activity under Title VII.").

1  Delgadillo has failed to raise any genuine issue of material fact regarding his intentional
2  infliction of emotional distress claim. Delgadillo's Complaint alleges that Defendant, "by firing
3  Plaintiff in violation of NRS 613.330(1)(a) [and by attempting to fabricate a story and/or rationale
4  in order to get Plaintiff fired], has intentionally committed extreme and outrageous conduct with
5  either the intention of, or reckless disregard for, causing emotional distress," Compl. ¶¶ 82-83, and
6  that Defendant's conduct "actually and/or proximately caused Plaintiff's severe and extreme
7  emotional distress," *id.* ¶ 82. Delgadillo, however, is unable to support these claims. As explained
8  above, Delgadillo has failed to raise any genuine issue of material fact regarding Defendant's
9  alleged violation of Nevada Revised Statutes § 613.330(1)(a). Furthermore, even if Delgadillo
10 could raise a genuine issue regarding his allegedly wrongful termination, "termination of
11 employees, even in the context of a discriminatory policy, does not in itself amount to extreme and
12 outrageous conduct actionable under an intentional infliction of emotional distress theory." *Alam*
13 *v. Reno Hilton Corp.*, 819 F. Supp. 905, 911 (D. Nev. 1993). Additionally, although Delgadillo's
14 Complaint alleges that he suffered "severe and extreme emotional distress," he has failed to direct
15 the court to any evidence or testimony to support this claim. As noted above, "the nonmoving
16 party [must] go beyond the pleadings and identify facts which show a genuine issue for trial." *See*
17 *Fairbank*, 212 F.3d at 531 (citing *Celotex*, 477 U.S. at 323-24; *Anderson*, 477 U.S. at 248).
18 Therefore, summary judgment is appropriate because Delgadillo has failed to raise any genuine
19 issue of material fact regarding his intentional infliction of emotional distress claim.

## II. Conclusion

For the reasons stated herein,

THE COURT HEREBY ORDERS that Defendants' motion for summary judgment (ECF No. 16) is GRANTED.

/////

/////

11

Dated this 18 day of March, 2011.

_____
Lloyd D. George
United States District Judge